[Cite as *Lake Milton Estate Property Owner Assn., Inc. v. Hufford*, 2018-Ohio-4784.]

# IN THE COURT OF APPEALS OF OHIO

### SEVENTH APPELLATE DISTRICT
### MAHONING COUNTY

LAKE MILTON ESTATE PROPERTY OWNERS
ASSOCIATION, INC., et al.,

Plaintiffs-Appellants,

v.

WILLIAM HUFFORD, et al.,

Defendants-Appellees.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 17 MA 0163

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2017 CV 351

**BEFORE:**
Cheryl L. Waite, Carol Ann Robb, Kathleen Bartlett, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. John A. McNally, III*, John A. McNally, III, Co., LPA, 100 E. Federal St., Suite 600, Youngstown, Ohio 44503, for Plaintiffs-Appellants

*Atty. David A. Shepherd*, and
*Atty. Stephen A. Turner*, Turner, May & Shepherd, 185 High Street, N.E., Warren, Ohio 4481-1219, for Defendants-Appellees.

Dated: November 30, 2018

---

**WAITE, J.**

**{¶1}** Appellants, Lake Milton Estate Property Owners Association, Inc. and six individuals identified as landowners of the Association ("the Association"), appeal a November 6, 2017 Mahoning County Common Pleas Court's decision to grant Appellees, William Hufford and William A. Hufford, summary judgment. The issue on appeal is whether the trial court erred in concluding that no evidence was presented to support Appellants' claim that Appellees were members of the Association and subject to its rules. We conclude the trial court correctly held that there was no evidence presented to establish that Appellees' parcel was included within the Association and summary judgment was proper. The judgment of the trial court is affirmed.

Factual and Procedural History

**{¶2}** Appellees are the owners of an unimproved parcel of real estate located on Salem Drive in Lake Milton, Ohio. Appellees purchased the property in 2006. The parcel is also identified as Lot 819 of the BPOE Country Club Allotment ("Lot 819"). The BPOE Country Club Allotment ("Allotment") was platted on or around 1924 by BPOE Country Club Company. (Appellees' Motion for Summary Judgment, Exh. "B", pp. 4-5.)

**{¶3}** In September of 1952 and again in January of 1953, I.J. Denmark, an owner of various parcels in the Allotment, including Lot 819, recorded two "Declarations as to Restrictions". Both are nearly identical and include restrictions concerning setbacks, square footage of buildings and water/sewer lines. The 1952 Declarations as to Restrictions reads, in pertinent part:

1. That on all lots in the B.P.O.E. Country Club Allotment shall contain not less than 720 square feet, except the garages. Garages may be built with

Case No. 17 MA 0163

no restrictions as to size. A garage apartment may be erected on the rear one-third of any one lot but only after the main house has been completed.

2. Building setbacks shall be ten per cent (10%) of frontage per lot from rear property line and each side property line. Setback from front property line shall be not less than twenty five (25) feet. That no building shall be built on any lot or tract containing less than forty (40) feet frontage.

3. That sewage from any building erected on the premises shall be cared for by the owners or occupants installing a septic tank which shall at all times be maintained in a proper sanitary condition, and that no privy vaults or cesspools shall be maintained on said premises.

4. That an assessment of one hundred fifty dollars ($150.00) shall be payable to said sellers and shall run against said lot and shall be a lien thereon in the event that said sellers construct a water main in the street running by said lot and provide a water supply available to the same, said assessment to be paid at the time said water supply system is completed and made available to said lot. No house trailers or temporary living quarters shall be allowed on any lot.

{¶4} The main distinction in the 1953 Declaration, filed just three months later, is that the restriction on trailers or temporary living quarters found in paragraph four was separated out as a fifth declaration, and a sixth declaration delineating one lot for a club house was added. Neither the original plat filed in 1924, nor the two subsequent 1952 or 1953 recordings mention or reference a homeowners association or planned community. (Appellees' Motion for Summary Judgment, Exh. "B", pp. 4-5.) Further, the

chain of title for Lot 819 is completely devoid of any reference to a homeowners association, planned community or any associated fees. (Appellees' Motion for Summary Judgment, Exh. "B", pp. 3, 18-25.)

{¶5} On February 10, 2017, Appellants filed a complaint with the trial court alleging that Appellees were members of the Association; were in violation of the rules and regulations of the Association by placing a porta-potty, shed, trailer and outhouse on the property; and had failed to pay dues to the Association. Appellants sought injunctive and other equitable relief.

{¶6} On August 1, 2017, Appellees filed a motion for summary judgment, contending: (1) the Association was not properly registered as a legal entity with the Ohio Secretary of State and cannot, without undertaking the required legal registration, simply acquire the rights of the BPOE Country Club Allotment; (2) notwithstanding its lack of legal formation, the Association never filed its code of regulations and bylaws with the Mahoning County Recorder and, hence, these do not appear in the record of title of Lot 819; and (3) no other declarations or bylaws appear in the record title for Lot 819 after the 1952 and 1953 filings.

{¶7} Appellants filed a brief in opposition on August 17, 2017 and subsequently filed additional affidavits and documents on August 18 and 29, 2017. Appellants claimed that Appellees' counsel admitted at a status conference that Appellees would be subject to rules and regulations of the Association if it could be proven that their parcel fell within the Association's allotment. Appellants argued that the evidence showed the lot was included in the Association's allotment, hence, Appellees were

bound by their counsel's statement. A hearing regarding summary judgment was held on November 3, 2017.

**{¶8}** On November 6, 2017 the trial court issued a judgment entry concluding: (1) the Association's declaration of restriction and bylaws were not filed with the Mahoning County Recorder and neither appear in the record title for Lot 819; (2) no other declaration or bylaws appear in the record title for Lot 819; (3) nothing in the title history of Lot 819 indicates that the owner of the parcel becomes a member of any owners' association or requires the owner to pay dues to any association; (4) as no genuine issue of material fact exists, summary judgment is proper. (11/6/17 J.E., p. 2.) Appellants filed this timely appeal.

<u>ASSIGNMENT OF ERROR</u>

THE TRIAL COURT ERRED BY GRANTING SUMMARY JUDGMENT IN

FAVOR OF THE DEFENDANT-APPELLEE, WILLIAM HUFFORD, ET AL.

**{¶9}** This appeal is from a trial court judgment resolving a motion for summary judgment. An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence most favorably in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317,

327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶10}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at 293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

**{¶11}** The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327.

**{¶12}** Appellants contend genuine issues as to material fact exist precluding summary judgment. Specifically, they argue it was undisputed that Lake Milton Estates, Inc. is a homeowner's association. Moreover, Appellants contend that the affidavit of the president of the Association, William Leone, and the deed restrictions filed in 1952 show that there are recorded restrictions on the parcels contained in the Allotment.

Appellants urge that those recorded restrictions apply to Appellees' lot since it was purchased after 1952. Appellants also allege that, pursuant to an affidavit filed by Penny Stratos, assistant secretary of the Association, other deeds (as attached to her affidavit) did properly contain a reference to Volume 21 of Plats, pp. 42-43 of the Mahoning County records. Finally, Appellants contend Appellees had actual notice that they were members of the Association based on two signs posted in the Allotment. The signs read "Lake Milton Estates, Inc. Members Only No Trespassing" and "Private Lake Milton Estates Inc. Property Owners and Authorized Vehicles Only."

{¶13} Appellees maintain that nowhere in the record title of Lot 819 is there any reference to either a homeowners' association or to restrictions placed on the subject parcel. Moreover, the deeds for other properties attached to the Stratos affidavit are irrelevant, as they have no connection to Lot 819 or demonstrate that Lot 819 is subject to any restrictions or homeowners' association regulations. Appellees also contend that Appellants do not exist as a valid legal entity because they have never filed the required registration documents with the Ohio Secretary of State and have never properly recorded any bylaws with the Mahoning County Recorder. Moreover, the two signs relied on by Appellants as evidence Appellees were on notice their property was included in an association fail to create valid ownership in the Association and cannot be used to circumvent the recording requirements of the Association.

{¶14} The Ohio General Assembly introduced Senate Bill 187 to establish requirements governing the formation and operation of a homeowners association, or what was termed "planned communities." SB 187 became Chapter 5312 of the Ohio

Revised Code when enacted. Known also as the "Ohio Planned Community Law," it became effective on September 10, 2010. R.C. 5312.01.

{¶15} R.C. 5312.15 provides a uniform framework for the establishment and operation of a planned community. A "planned community" is defined under the statute:

(M) "Planned community" means a community comprised of individual lots for which a deed, common plan, or declaration requires any of the following:

(1) That owners become members of an owners association that governs the community;

(2) That owners or the owners association holds or leases property or facilities for the benefit of the owners;

(3) That owners support by membership or fees, property or facilities for all owners to use.

R.C. 5312.01(M).

{¶16} R.C. 5312.01(G) defines a "declaration" as "an instrument a property owner executes and records to declare that the property is a planned community subject to the provisions of this chapter."

{¶17} For planned communities that existed before the September 10, 2010 effective date, R.C. 5312.15 provides:

This chapter shall be construed to establish a uniform framework for the operation and management of planned communities in this state and to supplement any planned community governing document that is in existence on the effective date of this chapter. In the event of a specific

conflict between this chapter and express requirements or restrictions in such a governing document, the governing document shall control. This chapter shall control if any governing document is silent with respect to any provision of this chapter.

{¶18} Existing homeowner associations were required to record their bylaws with the county recorder within 180 days after the statute's effective date of September 10, 2010, and within 90 days after the adoption of the bylaws by the association if they were adopted after the effective date. Any amendments to existing bylaws must be recorded within 60 days after the effective date. R.C. 5312.02(D)(1); R.C. 5312.02(D)(2).

{¶19} In considering the applicability of the Ohio Planned Community Law to Lot 819, Appellants had the burden to demonstrate that Lot 819 was part of a homeowners association. Evidence to demonstrate that a proper declaration was recorded which establishes that Lot 819 was part of a "planned community" and that Appellees as owners of the subject parcel are members of the homeowners' association was required. R.C. 5312.01(G); R.C. 5312.01(M). Appellants have failed to establish any of the above.

{¶20} It is undisputed by Appellants that the record chain of title for Lot 819 fails to even mention, let alone properly set forth, membership in any owners association or the requirement for the parcel owner to pay any dues to any association. The 1952 and 1953 "Declaration as to Restrictions" do reflect that restrictions on the BPOE Allotment were filed regarding setback, structure square footage and restrictions on temporary structures. However, neither the 1952 nor 1953 restrictions contain any indication that a

Case No. 17 MA 0163

homeowners association or planned community was in place or was intended to be put in place, and the record of title for Lot 819 gives no other indication that there are any other restrictions, bylaws or requirements imposed on the property. There is also no reference in the filings from the 1950's to any entity other than the "BPOE Allotment." Further, while Appellants' purported bylaws for their Association were included in their answers to interrogatories, there is no evidence that those bylaws were properly recorded with the recorder pursuant to the above statutory mandates, nor does this document appear anywhere in the record title for Lot 819. Moreover, the legal description for Lot 819 indicates that it is part of the "BPOE Country Club Allotment." A copy of a title exam incorporated into Appellees' motion for summary judgment provides no evidence that the BPOE Country Club Allotment is synonymous with, or had its interest transferred to, the Appellants' Association. (Appellees' Motion for Summary Judgment, Exh. A.)

{¶21} Finally, Appellants' contention that two signs posted at the entrance to the area serve to put Appellees on notice that they are subject to some homeowners association is completely contrary to the uniform Ohio Planned Community Act. If this signage was permitted to serve as notice of membership in a homeowners association in the complete and total absence of any reference to an association in the record title of the property, the Act would be rendered a nullity.

{¶22} Constructive notice is required to enforce any restrictive covenants on real property. The Ohio Planned Community Act recognizes restrictive covenants and requires that a planned community establish an association not later than 1) the date on which the first lot is conveyed to a bona fide purchaser or, 2) in accordance with the

Case No. 17 MA 0163

recording requirements for existing associations as set forth above. R.C. 5312.03(B); R.C. 5312.02(D)(1); and R.C. 5312.02(D)(2).

{¶23} It is axiomatic that restrictive covenants run with the land and bind subsequent purchasers of real property as long as the subsequent purchaser had notice of the covenant. *Emrick v. Multicon Builders, Inc.,* 57 Ohio St.3d 107, 109, 556 N.E.2d 1189 (1991). Appellants have not demonstrated that Lot 819 of the Allotment was intended to be bound by any properly recorded declaration of this Association. The chain of title for Lot 819 is devoid of any mention of a homeowners association. Appellants have not provided any rebuttal evidence showing that Lot 819 is subject to any restrictions of the Association.

{¶24} Even if the restrictions contained within the 1952 and 1953 declarations are sufficient to constitute constructive notice to Appellees that a planned community was intended to be formed, and that community contained Appellees' parcel, no further steps towards forming an appropriate association or bylaws were undertaken, There is no other filing of bylaws or indication in the record title for Lot 819 that an association exists. Moreover, and perhaps even more important here, Appellants present absolutely no evidence that they exist as a legally formed Association with standing to assert a claim against any parcel in the original BPOE Allotment. In their answers to Appellees' interrogatories filed with the trial court, Appellants filed for the first time a copy of a Code of Regulations and By-Laws for "Lake Milton Estates, Inc.," but that document is dated September, 2014 and all the signatures were obtained on August 21, 2015. There is no record of registration of the entity with the Ohio Secretary of State and no proof this document was ever recorded with the Mahoning County Recorder.

This precludes Appellants' ability to enforce any restrictions it now claims exist on Lot 819. Moreover, Appellees purchased the property in 2006. The Code of Regulations and By-Laws for "Lake Milton Estates, Inc." did not exist at that time, as evidenced by their own discovery submission. Finally, Lake Milton Estates, Inc. is not synonymous with Lake Milton Estate Property Owners Association, Inc. or with BPOE Allotment. Nowhere in the record is there evidence that even if properly formed, these were successive entities or that they in any way assumed interest in the rights of the original BPOE Allotment responsible for filing the restrictions in 1952 and 1953. The legal formation of a homeowner's association requires more than drafting documentation never registered with the secretary of state or filed with the recorder. Without evidence of any succession of interest from the original BPOE Allotment to Appellants, Appellants cannot assert a claim based on the 1952 and 1953 declarations. Therefore, it appears Appellants have no legal standing to pursue any claims against Lot 819.

### Conclusion

{¶25} A review of the record reveals that, while the 1952 and 1953 restrictions on Lot 819 contained provisions for lot size, setback and temporary structure usage, these are not sufficient to demonstrate Appellees had constructive notice a homeowners association or planned community existed for their parcel. Moreover, Appellants have not shown they were a properly formed legal entity that has standing to enforce any claims against property owners in the BPOE Allotment. No question of material fact appears in this record and the trial court did not err in granting summary judgment to Appellees. Based on the foregoing, Appellants' assignment of error is without merit and the judgment of the trial court is affirmed.

Case No. 17 MA 0163

Robb, P.J., concurs.

Bartlett, J., concurs.

[Cite as *Lake Milton Estate Property Owner Assn., Inc. v. Hufford*, 2018-Ohio-4784.]

---

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is affirmed. Costs to be taxed against the Appellants.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**