[Cite as *Vermillion Shores Athletic Club Owners Assn. v. Shoreline Village Apts.*, 2025-Ohio-125.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

VERMILION SHORES ATHLETIC CLUB
OWNERS ASSOCIATION

    Appellee

    v.

SHORELINE VILLAGE APARTMENTS,
LLC

    Appellant

C.A. No.     23CA012066

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    22CV206810

DECISION AND JOURNAL ENTRY

Dated: January 21, 2025

HENSAL, Judge.

{¶1}    Shoreline Village Apartments, LLC ("Shoreline") appeals a judgment of the Lorain County Court of Common Pleas that granted summary judgment to Vermillion Shores Athletic Club Owners Association ("Vermillion Shores"). This Court reverses.

I.

{¶2}    Vermillion Shores filed a complaint for foreclosure against Shoreline, asserting that Shoreline had defaulted on its obligation to pay assessments related to the use of common property areas and that Vermillion Shores had filed a certificate of liens securing payment. Shoreline answered and asserted a counterclaim seeking declarations that Shoreline was not subject to Vermillion Shores' declaration and was not a member of Vermillion Shores and that Vermillion could not impose assessments upon Shoreline. Shoreline also sought a permanent injunction against Vermillion Shores' collection efforts on that basis. Both Shoreline and Vermillion Shores

moved for summary judgment, each maintaining that when the evidence was viewed in the light most favorable to the respective nonmoving party, there were no issues of material fact and that the movant was entitled to judgment as a matter of law. In connection with their motions, however, the parties' arguments raised issues regarding actual and constructive notice.

{¶3} The trial court granted summary judgment to Vermillion Shores. After reviewing the extensive history of conveyances underlying the dispute and the evidence submitted by the parties, the trial court wrote:

> The Court finds that it is clear from the conduct of the parties and history of the case, that [Shoreline] had both actual and constructive knowledge of the existence of the Association and was actually using it for its own tenants' benefit. [Shoreline] failed to present any other agreement or contract between the parties which would permit its own tenants to have access to and use of [Vermillion Shores'] Clubhouse and Amenities. If [Shoreline] is not part of the Association, then it should not let its own tenants use [Vermillion Shores'] Clubhouse and Amenities without expecting to compensate [Vermillion Shores] in anyway [*sic*].

The trial court concluded that Vermillion had demonstrated that Shoreline intended to be bound Vermillion Shores' declaration and bylaws "through both actual and constructive notice and through its own conduct. . . ." The trial court also concluded that Shoreline had not met its evidentiary burden under Civil Rule 56(C), noting specifically that the expert report submitted by Shoreline was "too narrow and fails to consider the entire picture as well as the facts of the case." Shoreline appealed, assigning two errors for this Court's review.

## II.

### ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN OVERRULING SHORELINE'S MOTION FOR SUMMARY JUDGMENT AND BY GRANTING VERMIL[L]ION SHORES' MOTION FOR SUMMARY JUDGMENT.

{¶4} Shoreline's first assignment of error argues that the trial court erred by granting summary judgment to Vermillion Shores. Because the trial court erred in applying Rule 56(C) in this case, this Court agrees.

{¶5} This Court reviews an order granting summary judgment de novo. *State ex rel. Internatl. Assn. of Fire Fighters v. Sakacs*, 2023-Ohio-2976, ¶ 15. Under Civil Rule 56(C), "[s]ummary judgment will be granted only when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law." *Byrd v. Smith*, 2006-Ohio-3455, ¶ 10. This standard requires trial courts to act "with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id*. at ¶ 11, quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). As the Supreme Court of Ohio has observed, "[b]efore ruling on a motion for summary judgment, the trial court's obligation is to read the evidence most favorably for the nonmoving party to see if there is a 'genuine issue of material fact' to be resolved. Only if there is none does the court then decide whether the movant deserves judgment as a matter of law." *Id*. at ¶ 12.

{¶6} Civil Rule 12(B)(6) serves a different purpose: it is a procedural mechanism for testing the sufficiency of a complaint. *State ex rel. Hanson v. Guernsey Cty. Bd. of Commrs.*, 65 Ohio St.3d 545, 548 (1992). Consequently, when evaluating a motion to dismiss under Rule 12(B)(6), a trial court must "presume that all factual allegations of the complaint are true and make all reasonable inferences in favor of the non-moving party." *Mitchell v. Lawson Milk Co.*, 40 Ohio

St.3d 190, 192 (1988). *See also Assoc. for Defense of Washington Loc. School Dist. v. Kiger*, 42 Ohio St.3d 116, 117 (1989) ("For purposes of a Civ.R. 12(B)(6) motion to dismiss, the material allegations of the complaint are taken as admitted.). In this case, however, the trial court blended the standards required by Rule 56(C) and Rule 12(B)(6):

> After presuming all factual allegations of the complaint to be true and considering all reasonable inferences in favor of the non-moving party, the Court finds that [Vermillion Shores] met its burden, that no genuine issue as to any material fact exists and that [Vermillion Shores] is entitled to judgment as a matter of law.

Instead of construing the evidence most strongly in favor of the nonmoving party, which is required when considering a motion for summary judgment, the trial court presumed the factual allegations of the complaint to be true and granted summary judgment to the plaintiff – Vermillion – based on that presumption.

{¶7} For that reason, this Court agrees that the trial court erred by granting summary judgment to Vermillion Shores. Because the trial court applied the incorrect standard, it is premature for this Court to consider whether the summary judgment should have been granted to Shoreline instead. Shoreline's first assignment of error is sustained.

## ASSIGNMENT OF ERROR II

> THE TRIAL COURT ABUSED ITS DISCRETION BY IMPUTING INTENT TO BE BOUND TO ALL OF VERMIL[L]ION'S COVENANTS, CONDITIONS, AND [RESTRICTIONS] ONTO SHORELINE.

{¶8} Shoreline's second assignment of error challenges the trial court's conclusion that Shoreline intended to be bound by Vermillion Shores' declarations and bylaws. In light of this Court's resolution of Shoreline's first assignment of error, the second assignment of error is premature.

III.

**{¶9}** Shoreline's first assignment of error is sustained. The second assignment of error is premature. The judgment of the Lorain County Court of Common Pleas is reversed, and this matter is remanded for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

JENNIFER HENSAL
FOR THE COURT

STEVENSON, P. J.
CONCURS.

FLAGG LANZINGER, J.
CONCURRING IN PART, AND DISSENTING IN PART.

{¶10}  I respectfully concur in part and dissent in part.  I agree that this Court must reverse the trial court's decision.  Unlike the majority, I would reverse the trial court's decision on its merits, holding that the trial court erred by granting summary judgment in favor of Vermillion Shores.  Additionally, I would hold that the trial court erred by not granting summary judgment in favor of Shoreline.  These conclusions require a more detailed explanation of the underlying facts, which are as follows.

{¶11}  The issue in this appeal is whether the Declaration of Covenants, Conditions, and Restrictions (the "Declaration") of the Association is within Shoreline's chain of title such that Shoreline is required to pay assessments for its use of the Association's facilities.  Shoreline argued below that the Association was not entitled to a foreclose because the Declaration was not within its chain of title.  The Association argued that it was entitled to a foreclosure because Shoreline intended to be bound by the Declaration, and Shoreline had actual notice that it was a member of Association.  The record reflects numerous conveyances and parcel splits that are relevant to this appeal, which I will summarize below.

**Conveyances & the Declaration**

*2001 & 2002 Deeds*

{¶12}  A warranty deed recorded in 2001 and a quitclaim deed recorded in 2002 conveyed approximately 52 acres of land near the shores of Lake Erie to Vermilion Shores Development Group, LLC.  In 2002, a general warranty deed conveyed approximately 23.6 of the approximately 52 acres from Vermilion Shores Development Group, LLC to Vermilion Shores Apartments, LLC.  This parcel is referred to as "Parcel A."

*2003 Declaration*

**{¶13}** In 2003, the Declaration was recorded. The "Declarant" of the Declaration was listed as Vermilion Shores Development Group, LLC and Vermilion Shores Apartments, LLC. The Declaration contemplated the development of a planned community consisting of condominiums, townhomes, single-family homes, and apartments. The Declaration provided in part:

> Declarant is the owner of the real property described as "Exhibit A" attached hereto and incorporated herein by reference (hereinafter "the Development"). Declarant intends by this Declaration to impose upon the Development mutually beneficial restrictions under a general plan of improvement for the benefit of all owners of property within the Development . . . .

Exhibit A to the Declaration included the legal description for Parcel A.

**{¶14}** The Association was formed as a corporate entity for the purpose of handling the operation and administration of the Vermilion Shores Athletic Club. The Declaration incorporated the Association's bylaws, which were also attached as an exhibit to the Declaration.

*2015 Parcel Split*

**{¶15}** As noted, at the time the Declaration was recorded in 2003, Vermillion Shores Apartments, LLC held title to Parcel A. In 2015, a quitclaim deed split Parcel A into three separate parcels. Vermillion Shores Apartments, LLC retained title to all three parcels.

*2016 Deed to Shoreline*

**{¶16}** In 2016, Vermillion Shores Apartments, LLC conveyed one of the three parcels to Shoreline ("Shoreline's Parcel") by a general warranty deed. The deed indicated that the "land described contains 15.4930 acres, but is subject to all legal roads, restrictions and easements of record."

*2019 Parcel Split*

{¶17}   In 2019, Shoreline—in a general warranty deed to itself–split Shoreline's Parcel into two separate parcels: 01-00-005-102-033 and 1-00-005-102-034 ("Shoreline's Parcels"). Shoreline's Parcels were the subject of the Association's complaint for foreclosure.  According to the parties, Shoreline split one of Shoreline's Parcels during the pendency of this case but maintains title to the split parcels.  I will refer to the parcels that were the subject of the Association's foreclosure complaint as "Shoreline's Parcels."

### Shoreline's Apartments

{¶18}   The record reflects that Shoreline constructed 56 tenant-occupied apartment units on Shoreline's Parcels between 2016 and 2020.  According to the Association, Shoreline constructed the apartment units to conform with the same architectural style as the other units within the Association, including matching earth tone building materials.  Tenants of Shoreline enjoy access to recreational facilities that the Association maintains, including a swimming pool, tennis courts, and a club house.  According to the Association, Shoreline has not paid its proportionate share of assessments to the Association for these common amenities since 2019.

### The Association's Complaint & Shoreline's Counterclaims

{¶19}   In 2022, the Association filed a complaint for foreclosure against Shoreline, as well as other defendants who are not a part of this appeal.  The complaint alleged that Shoreline was a member of the Association, that it was subject to the Declaration, and that it failed to pay assessments for its share of common property expenses as required under the Declaration.

{¶20}   Shoreline counterclaimed, arguing that the Declaration was not in its chain of title, and asserting claims for declaratory judgment and injunctive relief.  Specifically, Shoreline sought: (1) a declaration that it was not subject to the Declaration; (2)  a declaration that the Association

could not impose assessments on it; and (3) an injunction to prevent the Association from attempting to collect assessments from it and to release its liens against it.

## Shoreline's Motion for Summary Judgment

{¶21} After a period of discovery, the parties moved for summary judgment. In Shoreline's motion for summary judgment, it argued that it was entitled to judgment as a matter of law because the Declaration and the Association's bylaws were not in its chain on title. Consequently, Shoreline argued the Association had no authority to collect assessments from it.

{¶22} In support of its argument, Shoreline asserted that the Declaration was filed in 2003, which was after Vermilion Shores Apartments, LLC (its predecessor in title) took title to Parcel A in 2002. Shoreline noted that the subsequent deeds splitting Parcel A—and eventually conveying one of the split parcels to Shoreline in 2016—did not specifically reference the Declaration or its bylaws. Shoreline concluded that, because the Declaration was not in its chain of title, the Association could not collect assessments from it. In support of its motion, Shoreline attached an expert report from a title examiner who opined that the Declaration was not in Shoreline's chain of title.

{¶23} The Association opposed Shoreline's motion for summary judgment, arguing that Shoreline intended to be bound by the Association's Declaration and bylaws. In doing so, the Association acknowledged that the relevant deeds did not specifically reference the Declaration, but argued that the Association had actual notice of its membership in the Association. In support of its argument, the Association pointed to the fact that Giltz & Associations, Inc. and/or Harry W. Giltz, II and/or III: (1) manage(s) Shoreline; (2) formed Vermilion Shores Apartments, LLC and Vermilion Shores Development Group, LLC; (3) signed the relevant deeds (including the deed

conveying Shoreline's Parcel to Shoreline); (4) signed the Declaration; (5) formed the Association; and (6) participate(s) in owners' meetings for the Association. The Association summarized:

> Harry W. Giltz, III . . . has been involved with or affiliated with each and every business entity that has developed and owned present-day Shoreline Village since 2001. . . . Given the history of the Association's development and the conduct of the parties, [it] is clear that Shoreline had actual knowledge of its status as a member of the Association and its obligations under the Declaration.

{¶24} The Association concluded that Shoreline was not entitled to summary judgment because a genuine issue of material fact existed as to whether Shoreline had actual notice of its membership in the Association.

{¶25} In its reply in support of its motion for summary judgment, Shoreline did not dispute that it had actual notice of the Declaration. Instead, Shoreline argued that only constructive notice—not actual notice—could compel its membership in the Association. Shoreline reiterated that it did not have constructive notice because the Declaration was not in its chain of title. Consequently, Shoreline argued that the Association could not impose assessments on it, and that it was entitled to judgment as a matter of law.

### The Association's Motion for Summary Judgment

{¶26} The Association then filed a competing motion for summary judgment, arguing that it was entitled to judgment as a matter of law on its claims, as well as Shoreline's counterclaims. In its initial motion, the Association did not assert that the Declaration was in Shoreline's chain of title. Rather, the Association argued that Shoreline intended to be bound by the Declaration, and that Shoreline was aware of its position as a member of the Association.

{¶27} In support of its argument, the Association asserted that: (1) Shoreline provided a list of its tenants to the Association so that its tenants could be granted access (via key cards) to the Association's amenities; (2) Shoreline's representatives participated in the Association's

owners' meetings; (3) Shoreline previously advertised that its rental units had access to the Association's recreational facilities, including the pool, clubhouse, and fitness facilities; and (4) Harry W. Giltz, III (property manager of Shoreline) had been involved in or affiliated in every business entity that had developed and owned Shoreline. The Association attached an affidavit from its managing agent in support of some of these assertions.

{¶28} In further support of its motion for summary judgment, the Association relied on Shoreline's discovery responses wherein Shoreline admitted that: (1) its tenants have access to the Association's recreational facilities; (2) it previously advertised that its apartment units had access to a community room, fitness center pool, and tennis courts; and (3) it is "bound by part of the Declaration and not bound by other parts of the Declaration." The Association summarized that Shoreline "cannot reasonably claim that it is not subject to the terms and conditions of the Declaration that were created and filed by its affiliate entities." The Association concluded that there was no genuine issue of material fact as to Shoreline's membership in the Association and its obligation to pay assessments.

{¶29} Shoreline opposed the Association's motion for summary judgment. Consistent with its own motion for summary judgment, Shoreline argued that the Declaration was not in its chain of title, and that the Association had no authority to impose assessments on it. In support of its argument, Shoreline noted that the Declaration was filed after the relevant deed was filed, and that no subsequent deed in its chain of title referred to the Declaration.

{¶30} In its reply in support of its motion for summary judgment, the Association again argued that Giltz & Associates, Inc., its members, subsidiaries, or affiliates clearly intended for Shoreline to be bound by the Declaration and its bylaws. The Association also argued that, to enforce a restrictive covenant, the purchaser of land must have actual or constructive notice of the

covenant. The Association argued that Shoreline had not disputed that it had actual notice of the Declaration. The Association also argued that the Declaration was in Shoreline's chain of title because the Association was able to obtain a commitment for title insurance that referred to the Declaration under its exceptions. Notably, the Association did not point to any specific deed that indicated that the Declaration was in Shoreline's chain of title.

### The Trial Court's Decision

{¶31} The trial court granted the Association's motion for summary judgment and denied Shoreline's competing motion. In doing so, the trial court determined that the Association:

> met its burden of proof that [Shoreline] intended to be bound by the [Declaration] and Bylaws of [the Association] through both actual and constructive notice and through its own conduct in providing its own tenants with access to the Clubhouse and its Amenities.

{¶32} The trial court explained that Shoreline did not contest that it had actual notice of the Declaration. The trial court noted that Shoreline's tenants had access to the Association's facilities, that Shoreline requested keycard access to the facilities from the Association, and that Shoreline had not paid its share of the assessments. The trial court also noted that Shoreline admitted in its discovery responses that it was "bound by part of the Declaration . . . ."

{¶33} Regarding Shoreline's constructive notice of the Declaration, it appears that the trial court relied upon the fact that the 2016 deed to Shoreline (and subsequent deeds splitting the parcels) included language indicating that the conveyance was "subject to . . . all easements, conditions, leases, restrictions, right of ways and all other matters of record . . . ."

{¶34} After determining that the Association met its initial burden on summary judgment, the trial court concluded that Shoreline failed to meet its reciprocal burden. In doing so, the trial court acknowledged Shoreline's argument and its expert's opinion that the Declaration was not in Shoreline's chain of title. The trial court determined that Shoreline's expert's report was "too

narrow and fail[ed] to consider the entire picture[,]" and that Shoreline "appears to be trying to get the best of both worlds." The trial court concluded:

> it is clear from the conduct of the parties and the history of the case[] that [Shoreline] had both actual and constructive knowledge of the existence of the Association and was actually using it for its own tenants' benefit . . . If [Shoreline] is not part of the Association, then it should not let its own tenants use [the Association's] Clubhouse and Amenities without expecting to compensate [the Association] in anyway.

{¶35} The trial court then granted the Association's motion for summary judgment and denied Shoreline's competing motion. Shoreline then filed the instant appeal.

### Shoreline's Appeal

{¶36} In its first assignment of error, Shoreline argues that the trial court erred by overruling its motion for summary judgment and by granting the Association's motion. I agree.

{¶37} Under Civil Rule 56(C), summary judgment is appropriate if:

> (1) [n]o genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party.

*Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). To succeed on a motion for summary judgment, the party moving for summary judgment must first be able to point to evidentiary materials that demonstrate there is no genuine issue as to any material fact, and that it is entitled to judgment as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292 (1996). If the movant satisfies this burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 293, quoting Civ.R. 56(E). This Court reviews an award of summary judgment de novo. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105 (1996).

{¶38} Ohio's Planned Community Law, codified at R.C. Ch. 5312, became effective on September 10, 2010. AM.Sub.S.B. No. 187, 2010 Ohio Laws 41; *see* R.C. 5312.01 et seq. It

provides "a uniform framework for the establishment and operation of a planned community." *Lake Milton Estate Property Owners Assn., Inc. v. Hufford*, 2018-Ohio-4784, ¶ 15 (7th Dist.). The Association became subject to Ohio's Planned Community Law when that law went into effect. *See* R.C. 5312.15.

{¶39} "The Ohio Planned Community Law recognizes the common law principle of constructive notice for restrictive covenants." *Lubow v. Haaf Farms Homeowner's Assn.*, 2017-Ohio-2973, ¶ 38 (5th Dist.). A homeowner has constructive notice of its membership in a homeowners' association if the declaration establishing the association is within the homeowner's chain of title. *See id.* at ¶ 35-38; *Spring Lakes, Ltd. v. O.F.M. Co.*, 12 Ohio St.3d 333, 336 (1984), citing *Sternberger v. Ragland*, 57 Ohio St. 148, 156 (1897) (acknowledging that constructive notice requires proof that an instrument has been recorded in a purchaser's chain of title). If the declaration imposing assessments is not within the homeowner's chain of title, then the homeowners' association cannot compel membership or collect assessments from that homeowner. *Lubow* at ¶ 38; *Sandy Beach Apt., Ltd. v. Mitiwanga Park Co.*, 2008-Ohio-606, ¶ 38 (6th Dist.) ("[M]embership cannot be mandated without a restrictive covenant."); *Johnson's Island Property Owners' Assn. v. Nachman*, 1999 WL 1048235, *5 (6th Dist. Nov. 19, 1999) ("[A]bsent such deed restrictions, a nonprofit corporation cannot compel any individual to become a member of that organization who does not want to be a member.").

{¶40} In its motion for summary judgment, the Association had the burden of demonstrating that Shoreline was part of the Association. *Hufford* at ¶ 19. To meet this burden, the Association had to point to evidence establishing that the Declaration was in Shoreline's chain of title. *See id.* The Association failed to do so. Instead, the Association relied upon Shoreline's alleged actual notice of its membership in the Association. But Ohio law requires proof of

constructive notice. *Id.* at ¶ 22, citing R.C. 5312.03(B), R.C. 5312.02(D)(1), and R.C. 5312.02(D)(2) ("Constructive notice is required to enforce any restrictive covenants on real property."). To hold otherwise would render Ohio's Planned Community Law a nullity. *See id.* at ¶ 12, 21 (rejecting appellants' argument that appellees had "actual notice" of their membership in a homeowners' association, concluding that permitting such notice would render Ohio's Planned Community law a "nullity.").

{¶41} As noted above, the trial court appears to have concluded that Shoreline had constructive notice of the Declaration because the 2016 deed to Shoreline (and subsequent deeds splitting the parcels) contained language indicating that the conveyance was "subject to . . . all easements, conditions, leases, restrictions, right of ways and all other matters of record . . . ." I would hold that the general reference to restrictions of record did not provide Shoreline with constructive notice that it was subject to the Declaration, which was outside of its chain of title. *See Erickson v. Morrison*, 2021-Ohio-746, ¶ 2 (analyzing the Marketable Title Act and acknowledging that a general reference to a restriction created prior to the root of title does not preserve that interest from being extinguished under the Act).

{¶42} I would conclude that the Association failed to meet its initial burden on summary judgment because it failed to point to evidentiary materials demonstrating that the Declaration was in the Association's chain of title (i.e., that Shoreline had constructive notice of the Declaration). As a result, the burden on summary judgment never shifted to Shoreline, and the trial court erred by granting summary judgment in favor of the Association. *Dresher*, 75 Ohio St.3d 280 at 292.

{¶43} The trial court likewise erred by denying Shoreline's motion for summary judgment. Shoreline presented evidence demonstrating that the Declaration was not in its chain of title and, consequently, that the Association had no authority to impose assessments against. In

response, the Association failed to set forth evidence establishing that a genuine issue of material fact existed as to whether the Declaration was in Shoreline's chain of title. Instead, the Association asserted that Shoreline had actual notice of its membership in the Association, and that the Declaration was in Shoreline's chain of title because the Association was able to obtain a commitment for title insurance that referred to the Declaration under its exceptions. But neither actual notice nor a commitment for title insurance created a genuine issue of material fact as to whether the Declaration was in Shoreline's chain of title.

{¶44} The indisputable fact in this case is that Shoreline did not have constructive notice of the Declaration because it was not in its chain of title. Shoreline set forth evidence in its motion for summary judgment establishing this fact, and the Association failed to "set forth specific facts showing that there is a genuine issue for trial." *Dresher*, 75 Ohio St.3d 280 at 293, quoting Civ.R. 56(E). Shoreline was entitled to judgment as a matter of law, and the trial court erred by denying its motion for summary judgment. Accordingly, I would sustain Shoreline's first assignment of error. In light of this conclusion, I would overrule Shoreline's second assignment of error on the basis that it is moot. App.R. 12(A)(1)(c).

{¶45} For the foregoing reasons, I respectfully concur in part and dissent in part.


APPEARANCES:

STEVEN M. OTT, Attorney at Law, for Appellant.

DARCY MEHLING GOOD, Attorney at Law, for Appellee.